# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

CARL AMARI,

      Plaintiff,

v.

MICHAEL SPILLAN, et al.,

      Defendants.

Case No. 2:08-cv-829
JUDGE GREGORY L. FROST
Magistrate Judge Terence P. Kemp

## OPINION AND ORDER

This matter is before the Court on the Motion of Defendants, Lisa Buccellato and ML Financial Services, Inc., To Dismiss Plaintiff's Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(6) ("Buccellato Defendants' Motion to Dismiss") (Doc. # 38), Plaintiff Carl Amari's memorandum in opposition to the Buccellato Defendants' Motion to Dismiss (Doc. # 45), and the Buccellato Defendants' reply memorandum (Doc. # 48). For the reasons that follow, the Court **DENIES** the Buccellato Defendants' Motion to Dismiss.

### I. Background

Plaintiff Carl Amari filed this action on September 2, 2008 against Michael S. Spillan, Melissa K. Spillan ("Spillan Defendants"), the Buccellato Defendants, Rocco Pistilli and Strategic Alliance Group ("Pistilli Defendants"), and HedgeLender LLC. Amari filed the Amended Complaint on September 22, 2008. (Doc. # 10.)

In the Amended Complaint, Amari alleges that all Defendants engaged in a fraudulently induced loan scheme in which stock owned by Amari was transferred to an entity controlled by the Spillan Defendants as security for a loan from one of the Spillan's businesses, Triangle Equities Group, Inc. Amari contends that he was induced to enter into the loan by false

representations that the stock would not be sold and that within one year the stock would be returned to him upon payment of a set price. Amari further alleges that the stock was sold on the public markets and when he repaid the loan, the stock was unavailable for return to him.

Amari alleges that the Buccellato Defendants induced him to enter into the transactions with the Spillan Defendants. Amari was interested in obtaining a business loan in July 2005. Amended Complaint ¶¶ 22-24. Lisa Buccellato proposed a "First Loan" transaction "wherein Plaintiff would transfer 700,000 shares of Plaintiff's common stock [in]. . . Genius Products, Inc. ("Genius") for a loan in the amount of $750,750." *Id.* at ¶ 24. Buccellato represented that the Spillan Defendants "would hold the stock so that Plaintiff could reacquire the First Loan shares upon repayment of the Loan, plus a premium for the use of funds calculated on a 'month-per-share' basis." *Id.* at ¶ 25. In September 2005, Amari transferred the Genius stock to the Spillan Defendants, with the knowledge of the Buccellato Defendants, for proceeds of $690,000 under a purported "Stock Sale and Buyback Agreement." *Id.* at ¶¶ 26-30. The Buccellato Defendants received a 6% commission on the transaction. *Id.* at ¶ 31.

Amari further alleges that the Buccellato Defendants proposed a "Second Loan" transaction with the Spillan Defendants entities in December 2005, whereby Amari received a loan of $576,800 against the pledge of 400,000 share of Genius stock. *Id.* at ¶¶ 32-35. The Buccellato Defendants received a 6% commission on this loan. *Id.* at ¶ 36.

Amari avers that once the stock was transferred, the Spillan Defendants, with the Buccellato Defendants' knowledge, sold it for their own benefit. *Id.* at ¶ 38. Consequently, when Amari paid the Spillans the $798,000 to reacquire the First Loan shares, the stock was unavailable for return to him. *Id.* at ¶¶ 39-66. Likewise, Amari's demand for the Second Loan

2

shares has gone unsatisfied. *Id.* at ¶ 68. Amari has lost the benefit of his 1,100,000 shares of Genius stock, which at the time of the promised re-delivery, had an aggregate value of $3,520,000. *Id.* at ¶¶ 69, 70.

The Amended Complaint details the alleged conspiracy in which the Buccellato Defendants and the Spillan Defendants engaged. *Id.* at ¶¶ 82-88. It further explains that the Buccellato Defendants were part of an associational enterprise with the Spillan Defendants "with the common purpose of inducing borrowers, including Plaintiff, to enter into the purported stock loan transactions." *Id.* at ¶ 94. Finally, the Amended Complaint sets forth the numerous other actions that have arisen from the same alleged fraudulent loan scheme, including: *Joshua Fink v. Michael S. Spillan, CSG Fin., Inc., Schreiber Bosse and Co., Inc., and Trident Fin. Serv. aka Trident Group*, No. 03-CVH-11 12677 (Franklin Cty. Common Pleas Ct. May 18, 2003); *Nations Mobile v. Triangle Equities Group and One Equity Ltd*, No. BC324092 (Ca. Superior Court for the Cty. of Los Angeles November 5, 2004); *Charles Mottley v. Melissa K. Spillan dba Dafcan Fin., Inc., Triangle Equities Inc. dba Dafcan Fin., Inc. and Dafcan Fin., Inc.*, No. 2:07-cv-384 (S.D. Ohio May 7, 2007) (J. Frost); *Javeed Matin v. Dafcan Fin., One Equity Corp., Melissa Spillan, Michael Spillan, Rocco Pistilli and Strategic Alliance Group, Inc.*, No. 2:07-cv-452 (S.D. Ohio May 15, 2007) (J. Frost); *Nexus Holdings, Inc. v. Dafcan Fin., Inc., One Equity Corp., Melissa Spillan, Michael Spillan, ML Financial Serv., Inc., Lisa Buccellato, Rocco Pistilli and Strategic Alliance Group, Inc.*, No. 2:07-cv-029 (S.D. Ohio October 9, 2007) (J. Smith); *Robert Schwartz v. One Equity Corp., Dafcan Fin., Inc., Triangle Equities, Inc., Triangle Equitiies Group, Melissa K. Spillan, Michael S. Spillan, HedgeLender LLC, Roel Hoekstra, ML Fin. Services, Inc., Lisa Buccellato, Rocco Pistilli and Strategic Alliance Group, Inc.*, No. 2:07-

3

cv-1141 (S.D. Ohio November 5, 2007) (J. Marbley); and *Sec. & Exch. Comm'r v. One Equity Corp., Triangle Equities Group, Inc., Victory Mgt. Group, Inc., Dafcan Fin., Inc., Michael S. Spillan*, No. 08-cv-667 (S.D. Ohio July 10, 2008) (J. Sargus).

On February 26, 2009 the Pistilli Defendants were voluntarily dismissed from this action. (Docs. # 51, 52.)

## II. Standard

Fed. R. Civ. P. 12(b)(6) provides for dismissal of actions that fail to state a claim upon which relief can be granted. Under this standard, a court must construe the complaint in favor of the plaintiff, accept the factual allegations contained in the complaint as true, and determine whether Plaintiff's factual allegations present plausible claims. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).[1] The claims must "plausible" and not merely "conceivable." *Id.*

## III. Analysis

Amari alleges causes of action under the Racketeer Influenced and Corrupt Organization

---

[1]The Court notes that Amari argues under a now defunct standard, *i.e.*, a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. However, as the Sixth Circuit has explained:

> In [*Twombly*], the Court disavowed the oft-quoted Rule 12(b)(6) standard of *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957) (recognizing "the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief"), characterizing that rule as one "best forgotten as an incomplete, negative gloss on an accepted pleading standard." *Twombly*, 127 S. Ct. at 1969.

*Ass'n of Cleveland Fire Fighters*, 502 F.3d 545, 548 (6th Cir. 2007).

4

Act ("RICO"), 18 U.S.C. § 1962, Section 10(b) of the Securities Exchange Act of 1934 ("Securities and Exchange Act"), 15 U.S.C. § 78j(b),[2] and Securities and Exchange Commission Rule 10b-5, 17 C.F.R. § 240.10b-5,[3] and the common law of Ohio.  The Buccellato Defendants move to dismiss all of the claims against them.

**A. RICO and Securities Fraud**

In pertinent part, RICO provides that it "shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign

---

[2]Section 10(b) provides:

It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange –

(b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

[3]SEC Rule 10b-5 provides:

It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,

(a) To employ any device, scheme, or artifice to defraud,

(b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

(c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

5

commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity . . . ." 18 U.S.C. § 1962(c). "Racketeering activity" is defined as, *inter alia*, any act which is indictable as a violation of the mail and wire fraud statutes. 18 U.S.C. § 1961(1). RICO also prohibits conspiring to violate any of its substantive provisions, 18 U.S.C. § 1962(d), and provides a civil remedy for "any person injured in his business or property by reason of a violation of" the statute. 18 U.S.C. § 1964(c).

The Buccellato Defendants argue that the predicate acts identified in the Amended Complaint are insufficient to allege "racketeering activity" in light of the Private Securities Litigation Reform Act ("PSLRA"), 18 U.S.C. § 1964(c). Section 107 of the PSLRA amends RICO to state that "any person injured in his business or property by reason of a violation of [RICO] may sue . . . except that no person may rely upon any conduct that would have been actionable as fraud in the purchase or sale of securities to establish a violation of [RICO]." The Buccellato Defendants argue that the PSLRA eliminated "any conduct actionable as fraud in the purchase or sale of securities" as a predicate act for a private cause of action under RICO and that is exactly what Amari is alleging. In other words, the purchase and unapproved sale of Amari's stock does not constitute "racketeering activity" under RICO in light of the PSLRA. Amari and the Buccellato Defendants direct this Court's attention to *Bald Eagle Area Sch. Dist. v. Keystone Fin., Inc.*, 189 F.3d 321 (3rd Cir. 1999), for its on point analysis. The *Bald Eagle* Court explained:

> Prior to 1995, a private plaintiff could assert a civil RICO claim for securities law violations sounding in "garden variety" fraud. *See Sedima S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 504-505 (1985) (Marshall, J., dissenting). Inasmuch as "fraud in the sale of securities" was a predicate offense in both criminal and civil RICO actions, *Id.* at 504, plaintiffs regularly elevated fraud to RICO violations because RICO offered the potential bonanza of recovering treble damages. However, in

6

1995, Congress enacted the Private Securities Litigation Reform Act ("PSLRA"), Pub.L. No. 104-67, 109 Stat. 737 (1995). The PSLRA amended RICO by narrowing the kind of conduct that could qualify as a predicate act. Section 107 of the PSLRA (known as the "RICO Amendment") amended 18 U.S.C. § 1964(c), to provide in relevant part as follows:

> Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States District Court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee, except that no person may rely upon any conduct that would have been actionable as fraud in the purchase or sale of securities to establish a violation of section 1962.

18 U.S.C. § 1964(c)(emphasis added).

The Conference Committee Report accompanying § 107 states that the amendment was intended not simply "to eliminate securities fraud as a predicate offense in a civil RICO action," but also to prevent a plaintiff from "pleading other specified offenses, such as mail or wire fraud, as predicate acts under civil RICO if such offenses are based on conduct that would have been actionable as securities fraud." H. R. Conf. Rep. No. 104-369, at 47 (1995).

*Bald Eagle*, 189 F.3d at 327.

The *Bald Eagle* plaintiff pleaded mail fraud, wire fraud, and bank fraud as predicate offenses under RICO. The Third Circuit, in affirming the trial court's dismissal of the RICO claim, concluded that "a plaintiff cannot avoid the RICO Amendment's bar by pleading mail fraud, wire fraud, and bank fraud as predicate offenses in a civil RICO action if the conduct giving rise to those predicate offenses amounts to securities fraud." *Id.* at 330.

In the instant action, the Buccellato Defendants argue that Amari, like the plaintiff in *Bald Eagle*, cannot avoid the PSLRA's bar by pleading mail and wire fraud as predicate acts in his civil RICO claim. The Buccellato Defendants go even further and argue that "the statutory bar applies irrespective of whether or not the plaintiff could successfully allege or prevail on a claim for securities fraud." (Doc. #38 at 5 citing *Howard v. America Online, Inc.*, 208 F.3d 741,

7

749 (9th Cir. 2000)).

In opposition, Amari argues that, although the PSLRA eliminated securities fraud, or any claim that is actionable as securities fraud, as a predicate act in a civil RICO action, the "Buccellato Defendants mischaracterize the nature of the transactions sued upon by Plaintiff . . . [t]he Amended Complaint makes clear in its opening paragraph that the action arises from a 'fraudulently induced loan scheme' " not securities fraud. (Doc. # 45 at 2 citing Amended Complaint ¶ 1.) Further, Amari argues that the PSLRA applies only to "actionable" securities fraud claims.

The Court concludes that Amari is correct that only actionable securities fraud claims constitute predicate acts subject to the PSLRA's bar, *i.e.*, claims that can be brought under the fraud provisions of the Securities and Exchange Act. The statutory language specifically states such: "[N]o person may rely upon any conduct that would have been actionable as fraud in the purchase or sale of securities to establish a violation of section [18 U.S.C. §] 1962." 18 U.S.C. § 1964(c). Further, it was not simply the fact that the *Bald Eagle* plaintiff pleaded mail and wire fraud as predicate acts that supports the Third Circuit's decision. Instead, the predicate acts pleaded could not support a civil RICO claim because they were capable of "support[ing] convictions" under federal securities laws, *i.e.*, they were actionable securities fraud. *Bald Eagle*, 189 F.3d at 330.

> [T]he proper focus of the analysis is on whether the conduct plead as predicate offenses is "actionable" as securities fraud – not on whether the conduct is "intrinsically connected to, and dependent upon" conduct actionable as securities fraud.

*Id.* Indeed, at the same time the *Bald Eagle* RICO action was before the Third Circuit courts, the same conduct was the bases of a parallel securities fraud action under the Securities and

8

Exchange Act. *Id.* at 330.

Thus, the Court finds it necessary to first determine whether Amari's allegations constitute actionable securities fraud. In this regard, the Court agrees with Amari that any determination as to whether he has an actionable claim under the securities laws is premature. (Doc. # 45 at 14.) As the discovery unfolds, the parties will be in a better position to ascertain whether the alleged fraudulently induced loan scheme constitutes actionable securities fraud. At this early stage of these proceedings, the Court concludes that Plaintiff has sufficiently pleaded plausible claims under RICO and under the Securities and Exchange Act. *See Twombly*, 550 U.S. at 555.

### B. State Law Claims

The Buccellato Defendants argue that Amari's state law claim for conversion fails because he has failed to allege that the Buccellato Defendants converted or damaged his property rights, Amari's unjust enrichment clam fails because its allegation that the Buccellato Defendants merely benefitted from a fraudulent scheme perpetrated by others, and that Amari's fraud claim fails because it was not pleaded with particularity as required by Rule 9 of the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 9(b) (a plaintiff must "state with particularity the circumstances constituting fraud or mistake"). This Court disagrees.

Amari alleges that the Buccellato Defendants themselves mislead Amari as to the nature of the transaction and the return of his stock. That is, that the Buccellato Defendants themselves perpetrated fraud. Further, Amari's injury flows from this engagement in the fraudulent scheme, even if these defendants did not sell the stock themselves. Thus, both the conversion claim and the unjust enrichment claim are plausible and, therefore, survive the Buccellato Defendants'

9

Motion to Dismiss.

With regard to pleading with particularity, the same allegations Amari made in his Amended Complaint have been considered by Judge Marbley in *Schwartz v. One Equity Corp.*, on the Buccellato and Pistilli Defendants' motion to dismiss in that case, whereby the judge held:

> Schwartz explicitly alleges [in the Amended Complaint] that the [Defendants] misrepresented what would happen to his shares of [stock]. . . . This allegation soundly meets the particularity requirements of Rule 9(b).

(Case No. 07-cv-1141; Doc. # 88 at 7.) This Court finds Judge Marbley's conclusion correct and adopts the same analysis here. Consequently, Plaintiff's fraud claims also survive the Buccellato Defendants' Motion to Dismiss.

## IV. Conclusion

For the reasons set forth above, the Court **DENIES** the Buccellato Defendants' Motion to Dismiss. (Doc. # 38.)

**IT IS SO ORDERED.**

>               **/s/ Gregory L. Frost**
>               **GREGORY L. FROST**
>               **UNITED STATES DISTRICT JUDGE**