UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

CARL AMARI,

    Plaintiff,

v.

MICHAEL SPILLAN, et al.,

    Defendants.

Case No. 2:08-cv-829
JUDGE GREGORY L. FROST
Magistrate Judge E.A. Preston Deavers

## OPINION AND ORDER

This matter is before the Court on Plaintiff's Motion for Summary Judgment as to Lisa Buccellato and ML Financial Services, Inc. (Doc. # 95), Defendants Lisa Buccellato and ML Financial Services, Inc.'s Memorandum in Opposition to Plaintiff's Motion for Summary Judgment (Doc. # 106), and the Reply of Plaintiff to the Memorandum of Lisa Buccellato and ML Financial Services, Inc. to Plaintiff's Motion for Summary Judgment (Doc. # 106). For the reasons that follow, the Court **GRANTS in part and DENIES in part** Plaintiff's Motion for Summary Judgment as to Lisa Buccellato and ML Financial Services, Inc.

### I.  Background

Plaintiff Carl Amari ("Amari" or "Plaintiff") filed this action on September 2, 2008, against Michael S. Spillan and Melissa K. Spillan ("Spillan Defendants"), Lisa Buccellato and ML Financial Services, Inc. ("Buccellato Defendants"), Rocco Pistilli and Strategic Alliance Group ("Pistilli Defendants"), and HedgeLender LLC (together "Defendants"). Amari filed an amended complaint on September 22, 2008. (Doc. # 10.)

Amari claims that Defendants operated an illegal lending scheme designed to defraud

1

borrowers, including Amari, out of their stock holdings. Amari contends that the Buccellato Defendants induced him to enter into two fraudulent loan transactions with the Spillan Defendants. The alleged illegal lending scheme involved the Buccellato Defendants, the Pistilli Defendants, and HedgeLender arranging loan transactions and the Spillan Defendants and their businesses underwriting the loans, which were secured by the borrowers' stock. Amari claims that Defendants told borrowers that their stock would not be sold, except for certain small trades to ensure the liquidity of the stock or in the event of a default by the borrowers. Amari avers that despite these representations and unknown to the borrowers, Defendants liquidated the stock in order to fund the borrowers' loans.

Amari's involvement in the alleged illegal loan scheme began in July 2005, when Amari was interested in obtaining a business loan. The Buccellato Defendants proposed a "First Loan" transaction "wherein Plaintiff would transfer 700,000 shares of Plaintiff's common stock [in]. . . Genius Products, Inc. ("Genius") for a loan in the amount of $750,750." (Doc. # 10 ¶¶ 24.) Amari alleges that Lisa Buccellato represented that the Spillan Defendants "would hold the stock so that Plaintiff could reacquire the First Loan shares upon repayment of the Loan, plus a premium for the use of funds calculated on a 'month-per-share' basis." *Id.* at ¶ 25. In September 2005, Amari transferred the Genius stock to the Spillan Defendants, with the knowledge of the Buccellato Defendants, for proceeds of $690,000 under a purported "Stock Sale and Buyback Agreement." *Id.* at ¶¶ 26-30. The Buccellato Defendants received a 6% commission on the transaction.

Amari further alleges that the Buccellato Defendants proposed a "Second Loan" transaction with the Spillan Defendants in December 2005, whereby Amari received a loan of

2

$576,800 against the pledge of 400,000 shares of Genius stock. The Buccellato Defendants received a 6% commission on that loan as well.

Amari avers that once the Genius stock was transferred, the Spillan Defendants, with the Buccellato Defendants' knowledge, sold it for their own benefit. Consequently, when Amari paid the Spillan Defendants the $798,000 to reacquire the First Loan shares, the stock was unavailable for return to him. Likewise, Amari's demand for the Second Loan shares has gone unsatisfied. Amari has lost the benefit of his 1,100,000 shares of Genius stock, which at the time of the promised re-delivery, allegedly had an aggregate value of $3,520,000.

The amended complaint sets forth the numerous other actions that have arisen from the same alleged illegal lending scheme, including: *Joshua Fink v. Michael S. Spillan, CSG Fin., Inc., Schreiber Bosse and Co., Inc., and Trident Fin. Serv. aka Trident Group*, No. 03-CVH-11 12677 (Franklin Cty. Common Pleas Ct. May 18, 2003); *Nations Mobile v. Triangle Equities Group and One Equity Ltd*, No. BC324092 (Ca. Superior Court for the Cty. of Los Angeles Nov. 5, 2004); *Charles Mottley v. Melissa K. Spillan, Dafcan Fin., Inc., Triangle Equities Inc.*, No. 2:07-cv-384 (S.D. Ohio May 7, 2007) (J. Frost); *Javeed Matin v. Dafcan Fin., One Equity Corp., Melissa Spillan, Michael Spillan, Rocco Pistilli and Strategic Alliance Group, Inc.*, No. 2:07-cv-452 (S.D. Ohio May 15, 2007) (J. Frost); *Nexus Holdings, Inc. v. Dafcan Fin., Inc., One Equity Corp., Melissa Spillan, Michael Spillan, ML Financial Serv., Inc., Lisa Buccellato, Rocco Pistilli and Strategic Alliance Group, Inc.*, No. 2:07-cv-029 (S.D. Ohio Oct. 9, 2007) (J. Smith); *Robert Schwartz v. One Equity Corp., Dafcan Fin., Inc., Triangle Equities, Inc., Triangle Equities Group, Melissa K. Spillan, Michael S. Spillan, HedgeLender LLC, Roel Hoekstra, ML Fin. Services, Inc., Lisa Buccellato, Rocco Pistilli and Strategic Alliance Group, Inc.*, No. 2:07-cv-

1141 (S.D. Ohio Nov. 5, 2007) (J. Marbley); and *Sec. & Exch. Comm'r v. One Equity Corp., Triangle Equities Group, Inc., Victory Mgt. Group, Inc., Dafcan Fin., Inc., Michael S. Spillan*, No. 08-cv-667 (S.D. Ohio July 10, 2008) (J. Sargus).

On February 26, 2009, the Pistilli Defendants were voluntarily dismissed from this action. (Docs. # 51, 52.)

On April 14, 2009, the Court issued an Opinion and Order in which it denied the Buccellato Defendants' motion to dismiss the claims against them pursuant to Federal Rule of Civil Procedure 12(b)(6). (Doc. # 55.)

On October 8, 2009, the Court granted the Buccellato Defendants' counsels' request to withdraw. (Doc. # 84.) Since then, Lisa Buccellato has proceeded without the assistance of counsel and ML Financial Services, Inc. has failed retain counsel to represent it.

On March 31, 2010, the Court held a hearing on Amari's request for default judgment against HedgeLender, LLC and his request for attorneys' fees. As a result of that hearing, the Court granted Amari's motion for default judgment against HedgeLender, LLC and granted his request for attorneys' fees. (Doc. # 101.)

Also on March 31, 2010, Amari filed Plaintiff's Motion for Summary Judgment as to Lisa Buccellato and ML Financial Services, Inc., which the Court considers herein.

## II. Standard

Rule 56 of the Federal Rules of Civil Procedure provides in relevant part:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed. R. Civ. P. 56©. Pursuant to Rule 56©, summary judgment is appropriate if "there is no genuine issue as to any material fact . . . ." *Id.* In making this determination, the evidence must be viewed in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970). Summary judgment will not lie if the dispute about a material fact is genuine, "that is, if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986).

The party moving for summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its initial burden, the burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250 (quoting Fed. R. Civ. P. 56(e)); *Talley v. Bravo Pitino Restaurant, Ltd.*, 61 F.3d 1241, 1245 (6th Cir. 1995) ("nonmoving party must present evidence that creates a genuine issue of material fact making it necessary to resolve the difference at trial").

In ruling on a motion for summary judgment "[a] district court is not . . . obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989). Instead, a "court is entitled to rely, in determining whether a genuine issue of material fact exists on a particular issue, only upon those portions of the verified pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits submitted, specifically called to its attention by the parties." *Glover v. Speedway Super Am. LLC*, 284 F. Supp.2d 858, 862

(S.D. Ohio 2003).

### III. Discussion

Amari filed against the Buccellato Defendants claims under the Racketeer Influenced and Corrupt Organization Act, 18 U.S.C. § 1962 ("RICO"), Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) and Securities and Exchange Commission Rule 10b-5, 17 C.F.R. § 240.10b-5, and claims under Ohio law for fraud and conversion. Amari moves for summary judgment on the RICO and fraud claims.

### A. Plaintiff's Motion for Summary Judgment Against ML Financial Services, Inc.

Lisa Buccellato filed a memorandum in opposition to Plaintiff's Motion for Summary Judgment as to Lisa Buccellato and ML Financial Services, Inc., ostensibly on behalf of herself and ML Financial Services, Inc. However, "the rule of this circuit is that a corporation cannot appear in federal court except through an attorney." *Doherty v. American Motors Corp.*, 728 F.2d 334, 340 (6th Cir. 1984) (citing *Ginger v. Cohn*, 426 F.2d 1385, 1386 (6th Cir. 1970)). Buccellato avers that she is "the sole officer/director of ML Financial Services, Inc." (Doc. # 105-1 ¶ 2.) It is insufficient, however, that the person attempting the representation is an officer of the corporation. *Ginger*, 426 F.2d at 1386 ("An officer of a corporation, who is not a licensed attorney, is not authorized to make an appearance in this Court on behalf of the corporation. . . . 'The handling of the case in court for the corporation is a matter for its counsel, not for its officers.' ") (internal citations omitted). Thus, Buccellato cannot file documents of behalf of ML Financial Services, Inc.

The Court notes that in a companion case, ML Financial Services, Inc. was put on notice that it cannot be represented by Lisa Buccellato. *See Schwartz v. One Equity Corp., et al.,* No.

2:07-cv-1141, slip op. docketed at no. 114, at 1 (S.D. Ohio June 23, 2007) ("Because defendant ML Financial Services, Inc. is a corporation, it will be in default if it fails to retain new counsel who enters an appearance on its behalf within 30 days. A corporation may not maintain an action *in propria persona* or through an agent not admitted to practice law in the Ohio courts. *Union Savings Assn. v. Home Owners Aid, Inc.*, 23 Ohio St. 2d 60 (1970)). Therefore, the Court **STRIKES** any portion of Buccellato's opposition memorandum filed on behalf of ML Financial Services, Inc.

Consequently, ML Financial Services, Inc. has failed to oppose Amari's request for summary judgment against it. Once the moving party has met its initial burden of setting forth the absence of a genuine issue of material fact, which Amari has done here, *see infra*, the burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250 (quoting Fed. R. Civ. P. 56(e)). ML Financial Services, Inc., has failed to meet its burden. Accordingly, the Court **GRANTS** Plaintiff's Motion for Summary Judgment as to Lisa Buccellato and ML Financial Services, Inc. as it relates to Amari's claims filed against ML Financial Services, Inc.

**B. Plaintiff's Motion for Summary Judgment Against Lisa Buccellato**

   **1. RICO**

RICO provides that it "shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity . . . ." 18 U.S.C. § 1962©. An "enterprise" includes any individual, partnership, corporation, association, or other legal entity, and any union or group of

individuals associated in fact although not a legal entity. 18 U.S.C. § 1961(4). "Racketeering activity" is defined as, *inter alia*, any act which is indictable as a violation of the mail and wire fraud statutes. 18 U.S.C. § 1961(1). "A 'pattern of racketeering activity' is defined as requiring at least two acts of racketeering activity," as predicate offenses, "one of which occurred after the effective date of this chapter and the last of which occurred within ten years . . . after the commission of a prior act of racketeering activity." 18 U.S.C. § 1961(5). RICO also prohibits conspiring to violate any of its substantive provisions, 18 U.S.C. § 1962(d), and provides a civil remedy for "any person injured in his business or property by reason of a violation of" the statute, 18 U.S.C. § 1964©.

Amari argues that the illegal lending scheme in which Defendants engaged constitutes an enterprise and that Defendants engaged in a pattern of racketeering activity, the heart of which was the use of the mails and wire transfers. In her opposition memorandum, Buccellato argues, first, that the alleged fraudulent loan transactions constitute actionable securities fraud and therefore, they cannot be relied upon to establish a violation of RICO. Second, Buccellato contends that Amari has no standing to bring a RICO claim.[1]

    **a. Securities fraud**

Buccellato argues that the two transactions, the First Loan and the Second Loan, were sales and purchases of securities, which prevent the transactions from constituting "racketeering

---

[1]In his reply memorandum, Amari states that Buccellato also argues that Amari failed to allege "his RICO claims with the specificity required by Fed. R. Civ. . 9(b) . . . ." (Doc. # 106 at 2.) This statement, however, is inaccurate. Buccellato argues that Amari failed to plead with particularity his state law fraud claim, not his RICO claim. (Doc. # 105 at 6) ("Plaintiff's state law fraud claim fails because Plaintiff has not alleged that the Defendants Buccellato and ML Financial made any false representations of material fact to him with the particularity required by Fed. R. Civ. P. 9(b) . . . ."). The Court addresses that argument *infra*.

8

activity" in light of the Private Securities Litigation Reform Act ("PSLRA"), 18 U.S.C. § 1964©. Section 107 of the PSLRA amends RICO to state that "any person injured in his business or property by reason of a violation of [RICO] may sue . . . except that no person may rely upon any conduct that would have been actionable as fraud in the purchase or sale of securities to establish a violation of [RICO]." Buccellato argues that the PSLRA eliminated "any conduct actionable as fraud in the purchase or sale of securities" as a predicate act for a private cause of action under RICO and that is exactly what Amari is alleging. This is the exact same argument that the Buccellato Defendants made in their motion to dismiss. (Doc. # 38.)

In the Buccellato Defendants' motion to dismiss, the parties directed the "Court's attention to *Bald Eagle Area Sch. Dist. v. Keystone Fin., Inc.*, 189 F.3d 321 (3rd Cir. 1999), for its on point analysis." (Doc. # 55 at 6.) This Court then stated:

> The *Bald Eagle* court explained:
>
>> Prior to 1995, a private plaintiff could assert a civil RICO claim for securities law violations sounding in "garden variety" fraud. *See Sedima S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 504-505 (1985) (Marshall, J., dissenting). Inasmuch as "fraud in the sale of securities" was a predicate offense in both criminal and civil RICO actions, *Id.* at 504, plaintiffs regularly elevated fraud to RICO violations because RICO offered the potential bonanza of recovering treble damages. However, in 1995, Congress enacted the Private Securities Litigation Reform Act ("PSLRA"), Pub.L. No. 104-67, 109 Stat. 737 (1995). The PSLRA amended RICO by narrowing the kind of conduct that could qualify as a predicate act. Section 107 of the PSLRA (known as the "RICO Amendment") amended 18 U.S.C. § 1964©, to provide in relevant part as follows:
>>
>>> Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States District Court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee, except that no person may rely upon any conduct that would have been actionable as fraud in the purchase or sale of securities to establish a

>     violation of section 1962.
>
> 18 U.S.C. § 1964(c)(emphasis added).
>
>> The Conference Committee Report accompanying § 107 states that the amendment was intended not simply "to eliminate securities fraud as a predicate offense in a civil RICO action," but also to prevent a plaintiff from "pleading other specified offenses, such as mail or wire fraud, as predicate acts under civil RICO if such offenses are based on conduct that would have been actionable as securities fraud." H. R. Conf. Rep. No. 104-369, at 47 (1995).
>
> *Bald Eagle*, 189 F.3d at 327.
>
>     The *Bald Eagle* plaintiff pleaded mail fraud, wire fraud, and bank fraud as predicate offenses under RICO. The Third Circuit, in affirming the trial court's dismissal of the RICO claim, concluded that "a plaintiff cannot avoid the RICO Amendment's bar by pleading mail fraud, wire fraud, and bank fraud as predicate offenses in a civil RICO action if the conduct giving rise to those predicate offenses amounts to securities fraud." *Id.* at 330.

*Id.* at 6-7. This Court went on to address the parties' arguments:

> In the instant action, the Buccellato Defendants argue that Amari, like the plaintiff in *Bald Eagle*, cannot avoid the PSLRA's bar by pleading mail and wire fraud as predicate acts in his civil RICO claim.
>
> In opposition, Amari argues that, although the PSLRA eliminated securities fraud, or any claim that is actionable as securities fraud, as a predicate act in a civil RICO action, the "Buccellato Defendants mischaracterize the nature of the transactions sued upon by Plaintiff . . . [t]he Amended Complaint makes clear in its opening paragraph that the action arises from a 'fraudulently induced loan scheme' " not securities fraud. (Doc. # 45 at 2 citing Amended Complaint ¶ 1.)

*Id.* at 7-8. This Court then concluded that it was necessary to determine whether Amari's allegations constitute actionable securities fraud. In that regard, Amari had argued that the inquiry was premature, and, this Court agreed:

> [T]he Court agrees with Amari that any determination as to whether he has an actionable claim under the securities laws is premature. (Doc. # 45 at 14.) As the discovery unfolds, the parties will be in a better position to ascertain whether the

10

> alleged fraudulently induced loan scheme constitutes actionable securities fraud. At this early stage of these proceedings, the Court concludes that Plaintiff has sufficiently pleaded plausible claims under RICO and under the Securities and Exchange Act. *See* [*Bell Atlantic Corp. v.*] *Twombly*, 550 U.S. [544,] 555 [(2007)].

*Id.* at 9.

Currently, Amari makes the argument that he is entitled to summary judgment on his RICO claim and does not mention in any way his claim for securities fraud. Instead, in his reply memorandum Amari argues that the Buccellato Defendants mischaracterize the loans as stock sales and points the Court to one of the relevant documents titled "Funding Proposal Stock Secured Loan," which states:

> This Funding Proposal merely sets forth some of the principal terms and conditions under which ML Financial Services, Inc. has arranged certain stock secured credit facilities to the undersigned Borrower. This document does not constitute an offer to purchase or sell, or the solicitation of an offer to buy or sell, any securities. . .

(Doc. # 105, Ex. A.)

Buccellato returns to her argument made in the Buccellato Defendants' motion to dismiss and maintains that Amari entered into a "Stock Sale and Buy Back Agreement," in which Amari agreed to "the sale of certain shares of stock by the Seller [*i.e.*, Amari] to the Buyer [*i.e.*, the Spillan Defendants] and the elective repurchase of the shares by the Seller from the Buyer." As such, Buccellato argues that the alleged "fraudulent loan scheme" is not a loan scheme at all but rather is a claim for fraud in the sale and purchase of securities.

The Court concludes that these documents are clearly inconsistent in their assessment of the transactions at issue here. The only evidence before the Court in this regard, besides Amari's and Buccellato's own interpretation of the documents, is in Amari's reply memorandum:

11

> It is been established through Mrs. Spillans testimony in *Matin* and *Schwartz*, that the Spillans intended, at the outset of every deal, to sell a borrowers stock, as there were no other funding sources available to them. More then once Mrs. Spillan failed in her attempts to demonstrate that the loan documents, with which Ms. Buccellato was familiar, expressly stated that stock would be sold.

(Doc. # 106 at 4.)

Amari fails to indicate in which of the hundreds of docket entries in *Matin* and *Schwartz* Mrs. Spillan's testimony may be found and it is unclear to the Court how that testimony supports Amari's position that the transaction did not give rise to actionable securities fraud. Perhaps the answer lies in the hundreds of documents filed and dozens of opinions issued in the related cases set forth in the "Background" section above. Amari does ask that this Court take judicial notice of "the pleadings and orders in all of these cases." (Doc. # 95 at 2.) Taking judicial, however, does not relieve Amari from directing this Court to where the information or evidence in those documents may be found. Indeed, this Court is not obligated to wade through and search the entire record in this case, let alone in numerous other cases, to find the evidence upon which a party relies. This exercise is not only not required of this Court, it would be an unfair use of its limited judicial resources. The Court has, however, reviewed the dispositive orders from those cases and, with regard to Amari's argument here, finds nothing to support it.

The Court concludes that, when viewing the evidence in the light most favorable to Buccellato, she has raised genuine issues of material fact as to whether the alleged fraudulent loan transactions are adequate predicate acts for which a RICO violation may be pursued and, if they are satisfactory, whether the transactions constituted a pattern of racketeering activity of an enterprise. Accordingly, the Court **DENIES** Plaintiff's Motion for Summary Judgment as to Lisa Buccellato and ML Financial Services, Inc. as it relates to the RICO claim filed against Lisa

Buccellato.

### b. Standing

Lisa Buccellato argues that Amari lacks standing to bring a RICO claim. This argument is without merit. As Judge Marbley held in the *Schwartz* case in response to this exact argument, which was literally copied exactly from the Buccellato Defendants' motion to dismiss in that case and pasted in Buccellato's opposition memorandum currently before this Court:

> The Moving Defendant next argue that Schwartz lacks standing to bring a RICO claim. This argument is without merit. A "plaintiff only has standing if, and can only recover to the extent that, he has been injured in his business or property by the conduct constituting the violation." *Sedima* [*v. Imrex Co.*], 473 U.S. [479,] 496 [(1985)]. As stated in the section IV(B)(2), Schwartz sufficiently alleged a conspiracy violation of RICO against the Moving Defendants. This violation allegedly deprived him of his Nuclear Solutions stock, which has a replacement value of approximately $1,495,000. As such, Schwartz suffered an injury to his property as a result of the violation, and thus, has standing to bring a RICO claim against the Moving Defendants.

*Schwartz v. One Equity Corp., et al.,* No. 2:07-cv-1141, motion docketed at no. 88, at 13 (S.D. Ohio Sept. 25, 2008).

This Court finds Judge Marbley's conclusion correct and for the same reasons determines that Amari has sufficiently alleged a RICO claim against Lisa Buccellato. Buccellato and others allegedly deprived Amari of his Genuis stock, which Amari claims had an aggregate value of $3,520,000. As such, Amari has sufficiently alleged an injury in fact, and thus, has standing to bring a RICO claim against Buccellato.

**B. Fraud**

Amari requests summary judgment on his claim for fraud. In Ohio, the elements of fraud are: (1) a representation of act; (2) which is material; (3) made falsely; (4) with intent to mislead; (5) with justifiable reliance thereon; and (6) injury. *Williams v. Aetna Fin. Co.*, 83 Ohio St.3d

13

464, 475 (1998) (citations omitted).

In her opposition memorandum, Buccellato argues that Amari failed to state a claim for fraud because he failed to plead it with particularity as required by Rule 9 of the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 9(b) (a plaintiff must "state with particularity the circumstances constituting fraud or mistake"). Buccellato made this exact argument to this Court in her motion to dismiss, which this Court found unpersuasive, indicating that Amari's allegations of fraud soundly met the particularity requirements of Rule 9(b). (*See* Doc. # 55 at 10.) Buccellato offers no reason why the Court should reconsider its previous conclusion and the Court can ascertain no reason to do so.

With regard to the merits of Amari's state law fraud claim, Amari argues that there are two categories of representations that are material, false, made with the intent to mislead, that he justifiably relied upon, and that caused him injury. Amari asserts that the first category of fraudulent misrepresentations are:

> [T]he statements made by Ms. Buccellato to Mr. Amari that lured him into these transactions. Ms. Buccellato told Mr. Amari that his stock would not be sold.

(Doc. # 95 at 15.) As to the next category, Amari states:

> The second category of concealment is composed of the various devices used to sell the collateral shares and then to justify doing so by claiming a safe haven in the loan documents. This tactic did not withstand the light of day in either the *Matin* or the *Schwartz* cases and will not here.

*Id.*

With regard to the first category, Buccellato filed an affidavit in support of her memorandum in opposition to Plaintiff's Motion for Summary Judgment as to Lisa Buccellato and ML Financial Services, Inc. in which she avers:

14

> I made no such representations to Amari that . . . the Lenders would hold the stock so Plaintiff could reacquire the First Loan Shares . . . ." (*sic*) (*See Amended Complaint* at 25). The transactions Amari completed were not loans but in fact a sale and purchase of stock.

(Doc. # 105-1 ¶ 39) (internal ellipses in original).

Plaintiff does not address this testimony in his reply brief, except to the extent that he argues, *supra*, with regard to the second category of alleged fraudulent misrepresentations, *i.e.*, that the *Schwartz* and *Matin* cases have examined this argument and found it to be unpersuasive. That proposition, however, does not demonstrate that there are no issues of material fact as to whether either category of alleged fraudulent misrepresentations constitute fraud under Ohio law. That is, neither *Schwatz* nor *Matin* issued a dispositive order on an Ohio fraud claim for relief. This Court reviewed the dispositive opinions issued in *Schwartz* and *Matin* in an attempt to find any resolution of an Ohio fraud claim to which Amari may be referring. That search was futile.

In *Schwartz*, the Court never addressed the state law fraud claim because the Buccellato Defendants only moved for dismissal of the RICO claims. *See Schwartz v. One Equity Corp., et al.,* No. 2:07-cv-1141, motion docketed at no. 88, at 1 (S.D. Ohio Sept. 25, 2008) ("The Moving Defendants argue that Schwartz failed to claim a substantive violation of civil RICO § 1962© and that he insufficiently pled his conspiracy claim under civil RICO § 1962(d).").

In *Matin*, the parties dismissed with prejudice before the Court ruled upon the state law fraud claim. *See Matin v. Dafcan Fin., et al.,* No. 2:07-cv-452, slip op. docketed at no. 49 (S.D. Ohio Aug. 29, 2007) (before the Court addressed the merits of any claim the parties notified the Court as to settlement and requested dismissal with prejudice, which the Court granted).

Consequently, when viewing the evidence in the light most favorable to Lisa Buccellato,

15

the Court concludes that she has raised a genuine issue of material fact as to whether she committed state law fraud against Amari.  Accordingly, the Court **DENIES** Plaintiff's Motion for Summary Judgment as to Lisa Buccellato and ML Financial Services, Inc. as it relates to the claim against Lisa Buccellato for fraud under Ohio law.

## IV.  Conclusion

Based on the foregoing, the Court **DENIES in part and GRANTS in part** Plaintiff's Motion for Summary Judgment as to Lisa Buccellato and ML Financial Services, Inc. Specifically, the Court **DENIES** the motion as it relates to Lisa Buccellato and **GRANTS** the motion as it relates to ML Financial, Inc.  The Clerk is **DIRECTED** to **ENTER JUDGMENT** in favor of Plaintiff against ML Financial Services, Inc.

**IT IS SO ORDERED.**

<u>**/s/ Gregory L. Frost**</u>
**GREGORY L. FROST**
**UNITED STATES DISTRICT JUDGE**